**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| **LISA M. GIBSON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:12CV00026 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING** | ) | By: James P. Jones |
| **COMMISSIONER OF SOCIAL** | ) | United States District Judge |
| **SECURITY,**[1] | ) | |
| | ) | |
| Defendant. | ) | |

*Lewey K. Lee, Lee & Phipps, PC, Wise, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Dina White Griffin, Assistant Regional Counsel, and Stephen M. Ball, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this Social Security disability case, I affirm the decision of the Commissioner.

I

Plaintiff Lisa M. Gibson filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income benefits

---

[1] Carolyn W. Colvin became the Acting Commissioner on February 14, 2013, and is substituted for Michael J. Astrue as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-434, 1381-1383f (West 2011, 2012 & Supp. 2013). Jurisdiction of this court exists under 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Gibson filed for DIB and SSI administratively on June 30, 2008. After preliminary denials of her claims, she obtained a hearing before an administrative law judge ("ALJ") on October 22, 2010, at which she was represented by counsel and during which she testified along with a vocational expert, Annmarie E. Cash, Ph.D., and two medical experts, Gary T. Bennett, Ph.D., a clinical psychologist, and Ward Stevens, M.D., a retired neurosurgeon. On November 2, 2010, the ALJ issued a written decision finding that Gibson was not disabled under the Act. Gibson requested review by the Social Security Administration's Appeals Council. The Appeals Council denied her request for review on July 10, 2012, thereby making the ALJ's decision the final decision of the Commissioner. Gibson then filed this action seeking judicial review of the Commissioner's decision.

The parties have filed cross motions for summary judgment, which have been briefed and orally argued. The case is ripe for decision.

II

Gibson claimed that she had been unable to work since October 1, 2007, based upon both exertional and nonexertional impairments, including breathing

problems, depression, and arthritis. At the time of the hearing before the ALJ Gibson was 47 years old. She left school after the tenth grade but has obtained a GED and has worked in the past as a fast food worker, food prep worker, convenience store owner, and flagger.

In her written decision, the ALJ reviewed Gibson's medical history and the testimony presented at the hearing and set forth at length the reasons for her factual findings. She found that Gibson had severe impairments caused by emphysema, COPD, seizure disorder, liver disorder, degenerative disc disease of the lumbar spine, right shoulder sprain, depression, and anxiety. The ALJ found that Gibson did not have an impairment that met or equaled the severity of a listed impairment under the applicable Social Security regulations. In addition, she found that Gibson had the residual functional capacity to perform light work, as defined by the regulations, with limitations appropriate to her impairments. While she could not perform her past work, based upon the testimony of the vocational expert, the ALJ determined that Gibson was capable of performing other types of jobs existing in significant numbers in the national economy.

It is contended in the present case that the ALJ improperly determined Gibson's residual functional capability by (a) failing to consider all of the opinions of Dr. Stevens; and (b) by failing to give full consideration to the findings of B.

Wayne Lanthorn, Ph.D., a clinical psychologist who evaluated Gibson at the request of her attorney.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4) (2013). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared

with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through the application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of the court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

I have carefully reviewed the record evidence and conclude that the ALJ's decision in this case is supported by substantial evidence and was reached through application of the correct legal standard.

### DR. STEVEN'S OPINIONS.

Dr. Ward Stevens testified at the hearing below as an impartial consultant to the ALJ. He had examined Gibson's medical records and opined that she was

suffering from chronic alcoholism and showed the first stage of alcoholic deterioration of the liver as well as mild atrophy of the cerebrum and cerebellum, consistent with chronic alcoholism.  (R. 60.)  He testified that she was "approaching" liver disease associated with alcoholism.  (R. 61.)  He noted her other medical issues and did not find them significant, but testified that "the liver problem is going to be soon. . . . it's not there yet." (*Id.* at 63.)  Later in his direct testimony, Dr. Stevens answered questions from the ALJ as follows:

> Q  So, in terms of severe impairments, would she have any severe impairments that would interfere with her functioning, have more than a minimum effect --
>
> A  Well, I think the, the combination of her problems -- each one taken individually, is not severe.  But if you put her liver disease, her minitation [phonetic] problems -- which can be associated with the fact there's indications of cerebral atrophy -- you combine these things together with her continued alcohol abuse and cigarette abuse, that, that it is severe, if you put them all together.
>
> Q  What limitations would she have as a result of their impairments?
>
> A  Well, if you put all those together, I think she's not going to be able to function in a workplace on a sustained basis.

 (R. 64-65.)

Later in the hearing, after other testimony, Gibson's attorney received permission to question Dr. Stevens again and the following occurred:

> Q Dr. Stevens, just to clarify your testimony, when you were saying that due to a combination of Ms. Gibson's problems, she couldn't sustain employment, was that currently or were you talking about in the future, if her liver problems continue to get more severe?

>A In the future.
>
>Q Okay. So, you believe now, she would be able to sustain full-time employment?
>
>A I'm sorry? What was your question?
>
>Q Sure. You testified that due to a combination of Ms. Gibson's problems -- even though none of them were that severe, in and of themselves -- that she was unable to function in the workplace on a sustained basis. Was that --
>
>A Yes.
>
>Q -- her current status?
>
>A Well, I -- well, her liver disease is in the future.
>
>Q Right.
>
>A For current status, I, I feel like she's going to, you know -- as long as she is an active alcoholic, she's not going to be able to work currently.
>
>ATTY: Okay. Thank you.

(R. 73-74.) Gibson's attorney then recalled Gibson as a witness, who testified as follows:

>Q Ms. Gibson, as far as the alcoholism, you testified that it was a significant problem in the past. Is that correct?
>
>A It was in the past.
>
>Q So, you do still drink occasionally?
>
>A Occasionally.

Q  Okay.

A  Maybe if a friend stops by or something, sees me.

Q  Okay.  Do you feel that it is a current problem for you?

A  No.

Q  Okay.  Now, what about -- any legal issues due to alcoholism?  That's all been prior to 2008?

A  I'm not understanding the question.

Q  Okay.  Have you had any arrests or anything --

A  No.  No.

Q  -- since 2008, concerning the alcohol?

A.  Nothing.

(R. 74-75.)

In her written decision, the ALJ found that Gibson's alcohol use was not determinative, stating as follows:

> In analyzing cases in which drug or alcohol addiction is present such addiction is not generally considered a material factor if, after evaluating all of the evidence, including the addiction, the claimant is not disabled.  In this case, when taking into consideration the claimant's addictions, which the claimant's representative asserted stopped in 2008 (testimony) in addition to her other alleged mental impairments she is not disabled by them for the reasons set forth below.  As a result, the undersigned find [sic] that the claimant's substance abuse history is not considered to be a material factor for purposes of this evaluation.
>
> The claimant's representative asserted the claimant's alcohol problem was in the past.  The evidence of record supports his

> assertion. During a mental health assessment in July 2010, the claimant reported only occasional use of alcohol. The claimant reported to her counselor in March 2009 that she was no longer prescribed Lortab by her treating physician at Stone Mountain Health Services because she failed a drug test. Her drug test was negative for Lortab and in the absence of the prescribed Lortab it was felt the claimant might be improperly disposing of her prescription medication (Exhibits 14F, 33F and 35F). The undersigned finds the claimant's alcohol use not material to this decision.

(R. 15.)

Gibson now argues that the ALJ erred in not accepting Dr. Stevens' opinion that her combination of impairments rendered her unable to work, pointing out that the vocational expert testified that if Gibson's alcohol abuse continued, taking into account Dr. Stevens' comments, there would be no jobs available to her in the national economy. (R. 69.) However, I find that it is clear from the record that while the ALJ did accept Dr. Stevens' opinions as to the effect of certain of Gibson's impairments on her ability to work, he did not accept Dr. Stevens' comments concerning her current abuse of alcohol, based upon Gibson's own testimony and other evidence in the medical record. The ALJ was within her authority to make such factual determinations and her findings are supported by substantial evidence.

### DR. LANTHORN'S OPINIONS.

Dr. Lanthorn evaluated Gibson on September 29, 2010. He found her to be suffering from a major depressive disorder, anxiety disorder, mild mental

retardation, and personality disorder. (R. 663-64.) In a checkbox report entitled Medical Assessment of Ability to Do Work-Related Activities (Mental), he indicated that she had no useful ability to function in several work-related categories. (R. 666-68.) The ALJ rejected these opinions, finding them based upon Gibson's subjective complaints and inconsistent with other evidence in the record. (R. 21-22.)

I find that the ALJ was justified in crediting the other medical evidence over Dr. Lanthorn's opinions. Dr. Bennett, who testified at the hearing below and was present for Gibson's testimony, was of the opinion that Gibson was "borderline" but not mentally retarded and that her depression and anxiety were only moderate. (R. 49.) He believed that the only relevant limitations were that any work must be simple, involving no dealings with the public and only limited contact with coworkers and supervisors. (R. 50-51.) The vocational expert testified, based upon a hypothetical question from the ALJ that incorporated these limitations, that there were jobs in the national and regional economy that she could perform. (R. 68-69.)

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment is denied, and the defendant's Motion for Summary Judgment is granted. A final

judgment will be entered affirming the Commissioner's final decision denying benefits.

It is so **ORDERED**.

ENTER: December 20, 2013

/s/  James P. Jones
United States District Judge